JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY v. GUNN.

Opinion delivered October 17, 1927.

1. EXECUTORS AND ADMINISTRATORS—AUTHORITY OF ADMINISTRATOR.— An administrator, whose letters of administration have been issued by the clerk of the probate court in vacation and never approved by the probate court in term time, can maintain an action for damages for pain and suffering endured by deceased as the result of a fatal accident.

2. RAILROADS—CAUSE OF DEATH QUESTION FOR JURY.—In an action by an administratrix against a railroad company for pain and suffering endured by deceased, evidence *held* to raise a question for the jury on the issue whether deceased was struck by the train or fell against it after the engine had passed her.

3. DEATH—DAMAGES FOR PAIN AND SUFFERING.—Where deceased's
arms and legs were broken, and a severe blow was inflicted above
her hip and she suffered 8 hours' pain and suffering following
a fatal accident, *held* that $4,000 damages was not excessive.

Appeal from Mississippi Circuit Court, Chickasawba
District; *G. E. Keck,* Judge; affirmed.

*Eugene Sloan,* for appellant.

*Nelson & Crawford,* for appellee.

SMITH, J.   Appellee brought this suit as the administrator of the estate of Caroline Ashbranner, to recover
damages to compensate the pain and suffering endured
by his intestate, which resulted from her being struck
by one of the passenger trains of the appellant railroad company.

The deceased was a widow, seventy years old at
the time of her death, and had no relatives, except some
nephews and nieces, and the suit was brought to recover
only for the pain and suffering.

The suit was tried upon the theory that a proper
lookout had not been kept, and that, had this been done,
the presence of the deceased on the track and the peril
of her position would have been discovered in time to have
avoided the injury.   There was a verdict and judgment
in favor of appellee in the sum of four thousand dollars,
from which is this appeal.

It is first insisted, for the reversal of the judgment
of the court below, that the capacity of the plaintiff as
administrator to sue was not shown, for the reason that
the letters of administration had been issued by the clerk
of the probate court in vacation, and had never been
approved by the probate court in term time, although
several terms of the court had intervened between the
date of the issuance of the letters and the trial of the
case.

In the case of *St. Louis-San Francisco R. R. Co.* v.
*Pearson,* 170 Ark. 842, 281 S. W. 910, the facts in regard
to the letters of administration were identical with those
in the instant case, and we there held that the administrator had the right to maintain the suit, although the action

of the clerk in vacation had not been approved by the court in term time. We there said:

"It is next insisted that the record shows that Eunice Pearson was appointed administratrix of the estate of J. L. Pearson, deceased, by the clerk in vacation, and that there can be no recovery because the record does not show that the vacation appointment was confirmed by the probate court when it next convened. Our statute provides that it shall be the duty of the courts of probate in term time, or the clerks thereof in vacation, subject to the confirmation or rejection of the court, to grant letters testamentary and of administration. Crawford & Moses' Digest, § 4. Letters of administration granted in vacation are not, under the terms of the statute, limited in point of time, so as to continue only to the succeeding term and then expire, unless confirmed by the court. They are subject to the confirmation or rejection of the court, and it is the duty of the court to pass upon them; but they are valid until they are rejected." (Citing authorities).

Appellant insists that, under the undisputed evidence, a verdict should have been directed in its favor, for the reason that the testimony of the engineer and fireman, which is not disputed, makes a case of non-liability.

It may be conceded that, under the testimony of the engineer and fireman, no liability was shown, but we do not think the testimony of these witnesses was so undisputed that we must say it was arbitrary for the jury not to accept it as true.

Deceased, at the time of her death, was returning to her home from a visit to a neighbor, about 3:30 in the afternoon. She reached the railroad track, and witnesses who saw her just before she was injured testified that she was walking between the rails. She had walked down the track, which at that place runs through her field, a distance of about two hundred yards, and the track ahead was straight for a distance of about a mile and a half. The train consisted of three cars and the engine, and the engineer testified that, just before he

had rounded the curve, he had whistled for a crossing, and had rung the bell, and, when he came upon the straight track, he saw the deceased a quarter of a mile ahead, and he whistled for her, and, when she did not leave the track, he whistled again when about three hundred yards away, and deceased stepped off the track and was standing in the clear, about three feet from the end of the ties, as the train passed her. The engineer testified that he had been on this run about fifteen years, and knew deceased, and recognized her as he passed; that, after the engine had passed her, he looked back, and saw her falling into the train, which was running only about twenty miles per hour. He stopped the train in about its length, and backed it up the track until the baggage car was opposite deceased, who was then lying on the ground, and the train crew picked the deceased up and put her in the baggage car. She was carried to Manila, the next station in the direction the train was going, and was later carried to the home of one of her nephews, where she died about midnight. The testimony of the fireman is to substantially the same effect.

The testimony shows the deceased received the following injuries: Her leg was broken above the knee, her upper arm was broken, and she received a blow just above the hip. From time to time she spat up blood, and suffered much pain. A niece of deceased's, who was with her when she died, testified that there were intermittent periods of consciousness and unconsciousness.

Witnesses on behalf of appellee testified deceased was walking between the rails, and the whistle was not sounded, and the bell was not rung, but that they did not see the injury, because the train intervened between them and deceased. That they observed the train stop in the field without having rung the bell or blown the whistle, and that fact attracted their attention, and they went over to the train, and observed that the grass and weeds along its side were crumpled and mashed down for the distance of about sixty feet, as if some one had been dragged over them. Appellant attempts to explain this circumstance by asserting that certain pas-

sengers, as well as members of the train crew, got off the train, and might have mashed down the weeds and grass.

The duty of the operatives of the train to keep a lookout has been defined in numerous decisions, and it is conceded that the instructions in .the case correctly declared the law. It will therefore be unnecessary to discuss the law of the case.

One of the instructions given at the request of appellant told the jury that, if the engine passed deceased without striking her, and she later fell into the train after reaching a place of safety, there was no liability against the railroad company, and to return a verdict in its favor.

It is the insistence of appellant that the undisputed testimony shows that the engine did not strike deceased, and that she was injured in the manner testified to by the engineer and fireman, and that the court should therefore have directed a verdict for the defendant. The correctness of this insistence is the principal question in the case.

The testimony is not undisputed, and we think in its entirety, with the inferences fairly deducible therefrom, is legally sufficient to support the finding made, that a proper lookout was not kept, and that the presence and peril of deceased could and would have been discovered, had the lookout been kept, in time to avoid injuring her.

There is no question but that deceased's presence on the track would have been discovered had a lookout been kept. Indeed, the engineer testified that he did see her, and several witnesses testified that no warning signals were given. There was testimony that the beam of the engine was about two feet above the rails, and that .the deceased, who was a small woman, was struck and badly bruised above the hip, the bruised place being about the height of the beam. We are also of the opinion that the mashed condition of the grass and weeds warranted the inference that the deceased was dragged by the train, rather than that she had fallen into it. At any rate, we are unable to say that the verdict of the jury was

not supported by sufficient testimony, and the finding of liability is therefore affirmed.

It is finally insisted that the verdict of the jury, which was for $4,000, is excessive, inasmuch as the plaintiff sued to recover only for the conscious pain and suffering. There is no fixed rule by which damages to compensate pain and suffering can be measured, and we can only determine what appears to be fair and reasonable under the circumstances of each case, and much must be left to the determination of the jury, where it does not appear that the verdict was the result of passion or prejudice.

The deceased's arms and legs were broken, and she received a blow just above the hip, and, as a result of these injuries, she spat up blood, especially when she was moved in the bed. The testimony shows the deceased lived something over eight hours after her injury, and that she was conscious most of the time, although there were periods of unconsciousness. The deceased groaned and complained of her suffering. Under these circumstances we do not think the verdict is so excessive that it must be reduced by us, and it is therefore affirmed.